**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SYLVIA BRUNSON,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **MICHAEL J. ASTRUE,** | : | **No. 10-6540** |
| **Commissioner of the** | : | |
| **Social Security Administration,** | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

TIMOTHY R. RICE                                                                    April 14, 2011
U.S. MAGISTRATE JUDGE

     Sylvia Brunson seeks judicial review of the Administrative Law Judge's ("ALJ") decision

denying her application for Supplemental Security Income ("SSI"). Brunson alleges the ALJ's

decision was not supported by substantial evidence because the ALJ: (1) incorrectly assumed

Brunson's past work constituted substantial gainful activity ("SGA"); (2) failed to impose a

sit/stand option when determining Brunson's residual functional capacity ("RFC");[1]

(3) improperly rejected the opinion of one of Brunson's treating physicians; and (4) improperly

questioned Brunson's credibility. <u>See</u> Plaintiff's Brief and Statement of Issues in Support of

Request for Review and Motion for Summary Judgment at 3-15, <u>Brunson v. Astrue</u>, No. 10-6540

(E.D. Pa. Mar. 5, 2011) [hereinafter Plaintiff's Brief].

     After careful review, I find the ALJ's decision was supported by substantial evidence.

Applying the Commissioner's regulations to the evidence of Brunson's work history

demonstrates her past work as a housekeeper -- at least during the second half of 2004 -- was

---

[1]Brunson's RFC reflects "the most [she] can still do [in a work setting] despite [her]
limitations." 20 C.F.R. § 416.945(a).

SGA.  Further, the ALJ sufficiently explained her rejection of a treating physician's opinion, as well as her determination of Brunson's credibility, and the record contains no other evidence supporting a sit/stand option.

Accordingly, I respectfully recommend Brunson's request for review be DENIED.

## PROCEDURAL HISTORY

On February 2, 2007, Brunson applied for SSI, alleging disability as of January 24, 2007.[2] R. at 11, 77, 79-81, 87.  Her application was denied on June 11, 2007, R. at 11, 30-35, and she timely sought a hearing, R. at 11, 36.  Brunson was represented by counsel at the October 6, 2008 hearing, which included testimony from Brunson and vocational expert Richard Baine.  R. at 11, 18-29.  On October 24, 2008, the ALJ denied Brunson's claim.  R. at 8-16.

The ALJ made the following findings in the course of applying the required five-step analysis.[3]  R. at 13-15.  At step one, the ALJ found Brunson had not engaged in SGA since

---

[2]Brunson also applied for, and was denied, SSI benefits in 2004.  R. at 14.

[3]The Social Security Administration has adopted a system of sequential analysis for the evaluation of disability claims, which is codified at 20 C.F.R. § 416.920.  The steps of the analysis are summarized as follows:

Step One: If the claimant is working, and if the work is substantial gainful activity, the claimant is not disabled.  If the claimant is not working or is not engaging in substantial gainful activity, the analysis proceeds to Step Two.  20 C.F.R. § 416.920(a)(4)(i).

Step Two: If the claimant has no severe impairment and no severe combination of impairments that significantly limits his physical or mental ability to do basic work activity, the claimant is not disabled.  If there is a severe impairment or severe combination of impairments, the analysis proceeds to Step Three.  20 C.F.R. § 416.920(a)(4)(ii).

Step Three: If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 to Subpart P of 20 C.F.R. Part 404, the claimant is disabled.  Otherwise, the analysis proceeds to Step Four.  20 C.F.R. § 416.920(a)(4)(iii).

February 2, 2007.  R. at 13.  At step two, the ALJ found Brunson suffers from the following severe impairments: degenerative disc disease ("DDD") with stenosis,[4] and diabetes.  Id.  The ALJ acknowledged Brunson had also received treatment for hypertension, left knee arthritis, and possible plantar fasciitis[5] in her left foot, but deemed those impairments non-severe.  Id.

At step three, the ALJ found none of Brunson's impairments, nor any combination thereof, met or medically equalled any of the Listed Impairments, including the Listings pertaining to major joint dysfunction, spine disorders, and diabetes mellitus.[6]  R. at 13; see 20 C.F.R., pt. 404, subpt. P, App'x 1, §§ 1.02, 1.04, 9.08.

Before moving on to step four, the ALJ determined Brunson had the RFC to perform the

Step Four: If the claimant retains the residual functional capacity to perform his past relevant work, the claimant is not disabled.  If the claimant cannot do the kind of work he performed in the past, the analysis proceeds to Step Five.  20 C.F.R. § 416.920(a)(4)(iv).

Step Five: If the claimant's residual functional capacity, age, education, and past work experience would permit the claimant to adjust to other work, the claimant is not disabled.  Otherwise, the claimant is disabled.  20 C.F.R. § 416.920(a)(4)(v).

[4]Stenosis is the abnormal narrowing of a duct or canal, such as the spinal canal, nerve root canals, or the spaces between vertebrae.  See Dorland's Illustrated Medical Dictionary 1795 (31st ed. 2007) [hereinafter Dorland's].

[5]Plantar fasciitis is inflammation of fibrous tissue in the sole of a foot.  Dorland's at 687, 692, 1476.

[6]The Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 is a regulatory device used to streamline the decision-making process by identifying those claimants whose medical impairments are so severe they would be found disabled regardless of their vocational background.  Sullivan v. Zebley, 493 U.S. 521, 532 (1990).  The Listing defines impairments that would prevent an adult -- regardless of age, education, or work experience -- from performing any gainful activity, substantial or otherwise.  Id.; 20 C.F.R. § 416.925(a).  The listing was designed to operate as a presumption of disability, making further inquiry unnecessary.  Sullivan, 493 U.S. at 532.

full range of light work.[7]  R. at 14.  In determining Brunson's RFC, the ALJ reviewed the

objective medical evidence, Brunson's hearing testimony, and the opinions of Brunson's treating

physician and a consultative examiner.  R. at 14-15.  She found Brunson's subjective complaints

were not credible "to the extent they are inconsistent with [the RFC]," R. at 14, and she largely

discredited the opinion of Brunson's treating physician, finding it was "not supported by any

objective findings or even treatment notes, but [was] based solely on the subjective allegations of

the claimant," R. at 15.

At step four, the ALJ found Brunson was able to perform her past relevant work as a

hotel housekeeper, which the vocational expert classified as light exertional work.  Id.; R. at 27-

28.  The ALJ, therefore, denied Brunson's claim without proceeding to step five.  Id.

Brunson sought review before the Appeals Council, R. at 6-7, arguing the ALJ erred in

finding she could do light work and in failing to ask the vocational expert about the extent to

which Brunson's impairments eroded the occupational base, R. at 116-17.  The Appeals Council

denied review on August 4, 2010.  R. at 1-4.

FACTUAL HISTORY

Brunson was 57 years old at the time of the ALJ's decision.[8]  R. at 16, 79.  She has a

---

[7]Light-level work is defined as work which requires maximum lifting of twenty pounds, with frequent lifting and carrying of ten pounds.  20 C.F.R. § 416.967(b).  Light work also "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls."  Id.

[8]Brunson is considered a "person of advanced age" under the Commissioner's regulations, which define advanced age as 55 years old or older.  See 20 C.F.R. § 416.963(e).  Age is one of the relevant factors in determining whether a claimant can adjust to other work in the national economy.  Advancing age is "an increasingly limiting factor in a [claimant's] ability to make such an adjustment."  20 C.F.R. § 416.963(a).

tenth-grade education and can communicate in English.  R. at 99, 104.  She last worked as a hotel

housekeeper from July 16, 2004 until she was fired on May 16, 2006.  See R. at 20, 100.

Brunson's total earnings during that period were as follows: $5,429.40 in 2004; $9,760.64 in

2005; and $3,708.80 in 2006.  R. at 84.  She does not assert her impairments affected her ability

to work as a housekeeper, although she does claim she missed work days due to appointments

with her doctors.  R. at 100.  After she was fired, Brunson collected unemployment.  R. at 21.

Brunson claimed disability as of January 24, 2007 due to arthritis, diabetes, high

cholesterol, and high blood pressure.[9]  R. at 100.  Records from Brunson's doctors, outlined

below, show a history of treatment for lower back and leg pain, diabetes, high cholesterol, high

blood pressure, and left foot pain.

From 2002 through August 2007, Brunson's primary care physician was Dr. Karen M.

Duckworth at the City of Philadelphia's Department of Public Health, District Health Center 9.

R. at 102, 132, 143-82.  Dr. Duckworth's records show Brunson received ongoing treatment for

diabetes, high cholesterol, and high blood pressure.[10]  See, e.g., R. at 158, 170, 172.  She suffered

from arthritis since 2003, R. at 173, and first complained of lower back pain in March 2004, R. at

---

[9]In her brief, Brunson also lists obesity among her medical problems.  See Plaintiff's
Brief at 2.  However, she never identified obesity as an impairment at the administrative level,
nor did she explain how her weight impacts her ability to work.  See, e.g., R. at 91-105.  The
ALJ, therefore, was not required to include obesity in her analysis.  See Rutherford v. Barnhart,
399 F.3d 546, 552-53 (3d Cir. 2005); Rickabaugh v. Astrue, No. 08-228J, 2010 WL 1142041, at
*5 (W.D. Pa. Mar. 24, 2010) (ALJ was not required to analyze obesity because claimant did not
assert it and the ALJ did not find it was a severe impairment).

[10]Brunson takes metformin to treat her diabetes; triamterene, quinapril, and diltiazem to
treat her high blood pressure; and lovastatin to treat her high cholesterol.  See R. at 103, 112,
146; Dorland's at 527, 1090, 1163, 1591, 1986 (defining diltiazem, lovastatin, metformin,
quinapril, and triamterene, respectively).  She suffers no side effects from her medications.  R. at
103, 112.

167.  For her arthritis, she was prescribed naproxen in 2005.  R. at 160; see Dorland's at 1251.

Progress notes from 2005 and 2006 reveal some references to arthritis and pain in Brunson's leg,

but no complaints of lower back pain.  R. at 153-66.

On January 24, 2007, Brunson complained of "ongoing low back pain."  R. at 152.  The

only treatment recommended at that time was exercise.  Id.  Notes from a March 15, 2007

examination revealed tenderness around the lower spine and a positive straight-leg raising

("SLR") test[11] on the right side.  R. at 149.  At that time, Dr. Duckworth recommended Brunson

avoid lifting more than ten pounds, avoid bending, walk on level surfaces for exercise, get an

MRI, attend physical therapy, and continue taking naproxen.  R. at 150.  She further noted it

would be "very difficult to work as a housekeeper."  Id.

An April 26, 2007 MRI of Brunson's lower back revealed "mild" narrowing of the spinal

canal, "secondary to degenerative changes at the L4-L5 and L5-S1 levels," resulting from bulging

disks, and "mild" narrowing of spaces through which spinal nerves pass "at the L3-4 level."  R.

at 132-33; see Dorland's at 738-39, 1795.

On May 4, 2007, Dr. Fred Tehrani, a consulting physician, examined Brunson and

summarized his findings, including the following: her blood pressure was "adequately

controlled" with medication; her cholesterol remained high despite medication; her blood sugar

was "under good control" with medication; she was not in acute distress; she had tenderness over

her lower spine but no radiating pain; she was able to bend and rotate at the waist, stand, get on

and off the examination table, and assume a supine position without difficulty; her heel and toe

_____

[11]A SLR test, or a Lasègue sign, is used to detect sciatica, a condition in which
protrusions in the lower spine result in pain that radiates from the lower back to the leg.  See
Dorland's at 1703, 1737.

walking was "good"; an SLR test was negative; her knees were stable, had full range of motion, and were not tender; and she walked with a steady gait and station. R. at 134-36.

In May and June 2007, Brunson attended eight physical therapy ("PT") sessions at Temple University to address her back pain. R. at 138-42. On June 14, 2007, Dr. Duckworth noted Brunson's "back feels better" as a result of the PT. R. at 147.

In November 2007, Brunson began treating with Dr. Rita Carabello at Einstein Community Health Associates. R. at 206-14, 222-25. During her first visit, Brunson complained of "episodic" low back pain lasting more than a year, but objective tests, including a SLR test, were negative. R. at 214. She continued to complain of low back pain in December 2007, so Dr. Carabello referred her for pain management. R. at 212-13.

Brunson was examined by Dr. S. Nadeem Ahsan at the Einstein Pain Institute on January 7, 2008. R. at 197-98. She told Dr. Ahsan her pain was "10/10" from her lower back down both legs, PT had not helped, naproxen partly relieved her symptoms, and she had no weakness or numbness in her legs. R. at 197. Dr. Ahsan noted Brunson walked without limping, could walk on toes and heels, had full strength in her legs and almost full strength in her hips, suffered no sensory deficit, had no spinal tenderness, and had negative SLR tests on both sides. R. at 197. She did, however, display a limited range of motion in her lower back. Id. Dr. Ahsan opined she suffered from lumbar radiculopathy[12] resulting from disk degeneration and protrusions in her lower spine. Id. He recommended steroid injections, R. at 198, the first of which was administered on January 31, 2008, R. at 194.

---

[12]Radiculopathy is a disease of the nerve roots, precipitated by chronic pressure on a spinal nerve root. See Dorland's at 1595; The Merck Manual 1901 (Mark H. Beers et al. eds., 18th ed. 2006).

After the first treatment, Brunson told Dr. Ahsan she experienced "very obvious pain relief," R. at 192, rating her pain as "2/10" on February 20, 2008, R. at 193. Dr. Ahsan speculated her pain was due to a compromise of spinal nerve passages that was not visible on the MRI, and recommended continued injections. R. at 192. Brunson received two more steroid injections on March 12 and April 16, 2008. R. at 185, 189. A few weeks after the second shot, Brunson described her pain as "7/10" and complained of foot cramps. R. at 188. On April 4, 2008, at Brunson's request, Dr. Ahsan prepared a letter explaining the injections provided some pain relief, but noting Brunson still complained of inability to perform her usual physical chores and claimed she had to lay down after standing for an hour. R. at 183.

Nearly two months after the third steroid injection, Brunson acknowledged "90% relief" in her lower back and legs, rating her pain "3/10." R. at 184. She described her remaining pain as "much less" and "on and off," noting it increased with increases in her activity but required her to take only six naproxen tablets in the previous month. Id.

In July 2008, Brunson visited a podiatrist for treatment of left foot, ankle, and heel pain. R. at 203. A possible diagnosis of plantar fasciitis was noted, and Brunson was prescribed an ankle brace and PT, which she attended from August through the date of the ALJ hearing. R. at 204-05, 226-30.

Dr. Carabello's notes from visits in June, July, and September 2008 contain no reference to complaints of low back pain.[13] Nonetheless, on September 15, 2008, Dr. Carabello filled out a medical source statement in which she opined Brunson's lower back impairment justified the

---

[13]Many of Dr. Carabello's notes are difficult to decipher. However, the notes dated after Brunson's third round of injections appear to reference only neck and foot pain, as well as her normal treatment for diabetes, high blood pressure, and high cholesterol. R. at 206-09.

following limitations: lifting and carrying less than ten pounds; standing and walking less than two hours in a workday; alternating between sitting and standing; limited pushing and pulling with legs; occasional balancing; no climbing, kneeling, crouching, crawling, or stooping; limited reaching; and limited exposure to extreme temperatures, vibration, humidity, and hazards.  R. at 222-25.  She based her opinion on "bulging and herniated dis[ks]" that make it difficult for Brunson to stand or sit "for a period of time," R. at 223; "lumbar disc disease with radiculopathy," id.; exacerbation of Brunson's back condition by "any bending component," R. at 224; and "[increase] in tissue texture and muscles surrounding the back, which then causes pain/spasm" brought on by certain environmental conditions, R. at 225.

During the administrative process, Brunson described the following symptoms and physical limitations:[14] difficulty walking, bending, sitting, lifting, and sleeping R. at 92; modified diet due to diabetes, R. at 93; inability to do chores without taking breaks, id.; inability to dance or run, R. at 96; trouble lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, seeing, and using her hands, id.; inability to work as a housekeeper because she is "in pain most of the time," R. at 98; a frequent need to miss work for doctors' appointments, R. at 100; and dependence on her son to care for her, R. at 114.  However, Brunson admitted she can cook meals, read, watch television, visit friends, keep doctors' appointments, take public transportation alone, and shop for food and clothing.  R. at 91-94.

---

[14]Brunson also described several mental limitations in her agency submissions.  See, e.g., R. at 95 (decreased ability to keep track of finances, difficulty remembering appointments); R. at 96 (difficulty completing tasks, remembering things, concentrating, understanding and following instructions); R. at 97 (paranoia and trouble handling stress and routine changes).  However, she never claimed she suffered from any mental impairments that limited her ability to work, R. at 100, 102, and she has not asserted any mental limitations here, Plaintiff's Brief at 2.

At her hearing, Brunson testified she experiences daily back pain that spreads to her legs, she can sit for about an hour, she can stand for about two hours, she can lift ten pounds, she can walk three blocks, and she has pain with bending and climbing stairs.  R. at 22-23, 25, 27.  She said she must lean against a counter while standing to wash dishes, she has difficulty vacuuming, and she goes grocery shopping with a companion to carry the bags.  R. at 23, 27.  She admitted steroid injections reduced her pain, but testified the pain came back.  R. at 23-24.  To further address the pain, she said she made an appointment to visit Dr. Ahsan again after the hearing.[15]  R. at 24.  According to Brunson, her daily routine involves getting out of bed, drinking coffee, smoking a cigarette, sitting and watching television, taking a pain pill, and laying down.  R. at 26.  She testified she has swelling and cramping in her left foot, R. at 26, which is reduced with PT but returns thereafter, R. at 27.

DISCUSSION

Substantial evidence supports the ALJ's determination that Brunson has past relevant work as a hotel housekeeper, and that she is still able to perform that work.  Her claims to the contrary are meritless.

I.    Legal Standard

I must determine whether substantial evidence supports the Commissioner's final decision.  42 U.S.C. § 405(g); Smith v. Comm'r of Soc. Sec., 631 F.3d 632, 633 (3d Cir. 2011); Rutherford, 399 F.3d at 552.  The factual findings of the Commissioner must be accepted as conclusive if they are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389,

---

[15]No records of subsequent visits or treatment were submitted at the agency level or with Brunson's brief here.

390 (1971) (citing 42 U.S.C. § 405(g)); <u>Smith</u>, 631 F.3d at 634; <u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 503 (3d Cir. 2009); <u>Rutherford</u>, 399 F.3d at 552.  "Substantial evidence is 'more than a mere scintilla.'"  <u>Diaz</u>, 577 F.3d at 503 (quoting <u>Plummer v. Apfel</u>, 186 F.3d 422, 427 (3d Cir. 1999)); <u>see also</u> <u>Smith</u>, 631 F.3d at 633.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Richardson</u>, 402 U.S. at 401 (quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)); <u>Smith</u>, 631 F.3d at 633; <u>Diaz</u>, 577 F.3d at 503.

I may not weigh the evidence or substitute my own conclusion for that of the ALJ.  <u>Burns v. Barnhart</u>, 312 F.3d 113, 118 (3d Cir. 2002).  I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. <u>Diaz</u>, 577 F.3d at 506.  If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently.  <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001).  At the same time, however, I must remain mindful that "leniency [should] be shown in establishing claimant's disability."  <u>Reefer v. Barnhart</u>, 326 F.3d 376, 379 (3d Cir. 2003) (quoting <u>Dobrowolsky v. Califano</u>, 606 F.2d 403, 407 (3d Cir. 1979)).

In addition, I retain "plenary review over the ALJ's applications of legal principles." <u>Payton v. Barnhart</u>, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (Katz, S.J.) (citing <u>Krysztoforski v. Chater</u>, 55 F.3d 857, 858 (3d Cir. 1995)).  Thus, I can overturn an ALJ's decision based on an incorrect legal standard even if I find it was supported by substantial evidence.  <u>Id.</u> (citing <u>Friedberg v. Schweiker</u>, 721 F.2d 445, 447 (3d Cir. 1983)).

A claimant is disabled if she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505; Smith, 631 F.3d at 634; Diaz, 577 F.3d at 503. The claimant satisfies her burden by showing an inability to return to her past relevant work. Rutherford, 399 F.3d at 551. Once this showing is made, the burden shifts to the Commissioner to show the claimant, given her age, education, and work experience, has the ability to perform specific jobs existing in the economy. 20 C.F.R. § 404.1520(a)(4)(v); see Smith, 631 F.3d at 634; Rutherford, 399 F.3d at 551.

II.      Brunson's Claims

    A.      Substantial Gainful Activity

    Brunson first challenges the ALJ's implicit finding that Brunson's past work as a hotel housekeeper constituted SGA and, therefore, "past relevant work." See Plaintiff's Brief at 3-6. She maintains her earnings records establish she did not make the minimum threshold amount to presumptively qualify her housekeeping job as SGA. See id. at 6. Her claim, however, is based on an erroneous calculation of her average monthly earnings for 2004.

    At step four, an ALJ must compare a claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). The claimant must prove at step four that her impairment prevents her from performing her past relevant work. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). "Past relevant work" is work done in the past fifteen years that amounted to SGA and lasted long enough for the claimant to learn how to do it.[16]  20 C.F.R. § 416.960(b)(1).

_____

    [16]Brunson does not suggest her job as a hotel housekeeper fails two of these three criteria, nor could she. The work was obviously done less than fifteen years ago, and her nearly two years on the job -- five-and-one-half months of which were in 2004 -- were sufficient for her to learn

SGA is "work activity that is both substantial and gainful," 20 C.F.R. § 416.972, and is primarily assessed in terms of earnings, 20 C.F.R. § 416.974(a)(1). Work may be "substantial" even if done on a part-time basis; it may be "gainful" even if no profit is earned, as long as it is "usually done for pay or profit." 20 C.F.R. § 416.972(a)-(b); Arroyo v. Comm'r of Soc. Sec., 82 F. App'x 765, 768 (3d Cir. 2003). A person presumptively engages in SGA if she earns, per month, more than "an amount adjusted for national wage growth." 20 C.F.R. § 416.974(b)(2). That amount changes over time. Id. In 2004, 2005, and 2006 the amounts were $810, $830, and $860 per month, respectively. See Soc. Sec. Admin., Substantial Gainful Activity (Oct. 29, 2010), http://www.ssa.gov/oact/cola/sga.html (last visited Apr. 7, 2011).

Brunson's earnings report, combined with her own description of the dates, hours, and wages associated with her past work, constitutes substantial evidence to support the conclusion that Brunson's job as a hotel housekeeper was SGA. According to her earnings report, Brunson's 2004 income totaled $5,429.40. R. at 84. On her initial disability report, Brunson noted she began working as a housekeeper on July 16, 2004, and stopped when she was "laid off" on May 16, 2006. R. at 100. She worked thirty hours per week, earning $7.60 per hour. Id. During her hearing, she explained that she began working in 2004 when the shelter where she resided "demanded that [she] go get a job," and she clarified that she and five co-workers were fired in May 2006. R. at 20-21.

When Brunson did not contest the SGA issue, see generally R. at 19-29, 116-17, the ALJ implicitly concluded, with no discussion, that Brunson's past work as a hotel housekeeper

_____

how to do the work, see Drejka v. Comm'r of Soc. Sec., 61 F. App'x 778, 783 (3d Cir. 2003) (less than three months as a hotel maid or dishwasher was long enough to constitute past relevant work).

constituted SGA and, therefore, "past relevant work." See R. at 15 (referring to past relevant

work, but only discussing Brunson's ability to perform the work, and not analyzing whether the

work satisfied the criteria for SGA). Although the ALJ "assumed" Brunson's prior work was

SGA "without actually analyzing [Brunson's] earnings record," see Plaintiff's Brief at 3, her

conclusion is supported by substantial evidence. See Jones v. Barnhart, 364 F.3d 501, 505 (3d

Cir. 2004) (the ALJ's discussion of the listings must be sufficient for meaningful judicial

review); Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20 (3d Cir. 2000) (the ALJ is not

required to use magic language or undergo a particular analysis).

First, Brunson's own description of her work schedule and hourly wage would yield

monthly earnings above the Commissioner's presumptive SGA levels.[17] Second, averaging

Brunson's total earnings for 2004 ($5,429, R. at 84) over the period of time she actually worked

at her housekeeping job in that year (from July 16, 2004 through the end of the year, or five-and-

one-half months, R. at 100), her monthly wage was $987.09,[18] which far exceeds the applicable

presumptive SGA level of $810.[19] Thus, substantial evidence supports the ALJ's determination

---

[17]Specifically, working thirty hours per week at a rate of $7.60 per hour, R. at 100, would yield a monthly wage of at least $912, assuming work was available to Brunson on a daily basis for at least four weeks per month.

[18]Brunson calculates her 2004 average monthly wage by dividing her total earnings by twelve months. See Plaintiff's Brief at 6. In doing so, she ignores the fact that she was not working for over half of that year, and only began her housekeeping job in mid-July. R. at 100. She also ignores the Commissioner's directives regarding how to calculate average monthly wages. See 20 C.F.R. § 416.974a (explaining wages are averaged separately for periods of time with different presumptive SGA levels, and for periods of time during which a claimant's work levels differ significantly).

[19]Brunson's actual earnings for 2005 ($9,800.64, R. at 84), when she worked all year, yield an average monthly wage of $816.72, which is just shy of the $830 presumptive SGA level.

that Brunson's past work as a hotel housekeeper met the criteria for SGA and constituted "past relevant work," at least from July 16 through December 31, 2004. See <u>Bowen</u>, 482 U.S. at 146 n.5; <u>Arroyo</u>, 82 F. App'x at 768; 20 C.F.R. §§ 416.960(b)(1), 416.974.

B.      Sit/Stand Option

Brunson next asserts a series of challenges to the ALJ's assessment of the evidence in analyzing Brunson's RFC. First, she asserts the ALJ erred in failing to include the need for a sit/stand option in her RFC determination. See Plaintiff's Brief at 7-11. However, the ALJ discredited the only evidence suggesting a sit/stand option was required, and she provided adequate explanations for doing so.

An ALJ may not make speculative inferences from medical evidence, <u>see e.g.</u>, <u>Smith v. Califano</u>, 637 F.2d 968, 972 (3d Cir. 1981), but may reject conflicting medical evidence. <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1187 (3d Cir. 1992). When a conflict in the evidence exists, the ALJ may choose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." <u>Mason v. Shalala</u>, 994 F.2d 1058, 1066 (3d Cir. 1993) (quoting <u>Cotter v. Harris</u>, 642 F.2d 700, 707 (3d Cir. 1981)); <u>accord</u> <u>Morales v. Apfel</u>, 225 F.3d 310, 317 (3d Cir. 2000). The ALJ must state more than ultimate factual conclusions to support her findings. <u>Hargenrader v. Califano</u>, 575 F.2d 434 (3d Cir. 1978). The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects. See <u>Stewart v. Sec'y of HEW</u>, 714 F.2d 287, 290 (3d Cir. 1983).

---

For 2006, when she worked from January through May 16, R. at 100, her actual earnings ($3,708.80, R. at 84) yield an average monthly wage of $824.18, again slightly less than the $860 presumptive SGA level. Brunson offers no explanation for the discrepancy between her actual earnings and the $912-per-month earnings available to her under the work schedule and wage she described in her application for benefits, <u>see</u> note 17, <u>supra</u>.

When assessing a claimant's RFC, an ALJ must include limitations that are medically supported and uncontroverted in the record. Rutherford, 399 F.3d at 554. Limitations that are medically supported, but also contradicted by other evidence, may or may not be found credible by an ALJ. Id. An ALJ may consider a claimant's asserted limitations credible even if they lack objective medical support. Rutherford, 399 F.3d at 554. However, an ALJ may choose to reject such limitations if there is conflicting evidence. Id.

The only evidence in the record that would support inclusion of a sit/stand option in Brunson's RFC is Dr. Carabello's medical source opinion, R. at 222-25, and Brunson's own statements, R. at 22-23; see also R. at 183 (letter from Dr. Ahsan citing Brunson's claim she must rest after standing for an hour).[20] The ALJ acknowledged Dr. Carabello's opinion and Brunson's testimony, but found they conflicted with the objective evidence and explained why. R. at 14-15. As I will fully discuss in Sections II(C) and II(D), infra, the ALJ committed no error in rejecting Dr. Carabello's opinion or making an adverse credibility finding regarding Brunson's statements. The remainder of the record does not contain medical evidence establishing the need for a sit/stand option. See, e.g., R. at 132-33 (MRI showing only mild stenosis); R. at 136 (listing Dr. Tehrani's findings, all of which are benign); R. at 184 (noting "90% relief" and "much less pain" after three steroid injections). Therefore, substantial evidence supports the

---

[20]In her brief, Brunson summarizes much of the record, including treatment notes of Dr. Duckworth from March 2007, long before Brunson's steroid injection treatments. See Plaintiff's Brief at 7. However, Dr. Duckworth's observations -- including Brunson's only positive SLR test -- do not justify a sit/stand option and are not consistent with subsequent assessments by Drs. Tehrani and Ahsan. Compare R. at 149-50, with R. at 134-37, 184-202. Notably, Brunson's summary of the medical evidence does not include Dr. Ahsan's most recent treatment notes documenting her improved condition after her third steroid injection. See Plaintiff's Brief at 7-9; R. at 184.

ALJ's determination that Brunson's RFC need not include a sit/stand option.  See Rutherford,

399 F.3d at 554; Stewart, 714 F.2d at 290.

C.    Dr. Carabello's Opinion

In connection with her sit/stand argument and separately thereafter, Brunson attacks the

ALJ's rejection of the opinion contained in her treating physician's medical source statement.

See Plaintiff's Brief at 9-13.  In light of the ALJ's explicit finding that Dr. Carabello's opinion

was not supported by the objective medical record, Brunson's argument lacks merit.

When determining what weight medical evidence deserves, an ALJ must first assess the

nature of the relationship between the claimant and the medical source.  A treating source is a

"physician, psychologist, or other acceptable medical source" who provides a patient with

"medical treatment or evaluation," and has an "ongoing treatment relationship" with the patient.

20 C.F.R. § 416.902.   A medical source may be considered a treating source where the claimant

sees the source "with a frequency consistent with accepted medical practice for the type of

treatment . . . required for [the claimant's] condition(s)."  Id.

A treating source's opinion is entitled to controlling weight when it is supported by

medically acceptable clinical and laboratory diagnostic techniques and is consistent with other

substantial evidence in the record.  See 20 C.F.R. § 416.927(d)(2); see generally SSR 96-2p,

1996 WL 374188 (July 2, 1996).  A treating source's opinion may be rejected "on the basis of

contradictory medical evidence," Plummer, 186 F.3d at 429, or if unsupported by sufficient

clinical data, Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985).  The opinion may be

accorded "more or less weight depending upon the extent to which supporting explanations are

provided."  Plummer, 186 F.3d at 429 (citing Newhouse, 753 F.2d at 286).  Where a treating

source's opinion is not given controlling weight, the ALJ must determine what weight to give the opinion by considering factors such as the length of the treatment relationship and frequency of visits, nature and extent of the treatment relationship, whether the medical source supports the opinion with medical evidence, whether the opinion is consistent with the medical record, and the medical source's specialization. 20 C.F.R. § 416.927(d). In choosing to reject a treating physician's assessment, an ALJ may not make "speculative inferences from medical reports," and may not base his rejection on "his or her own credibility judgments, speculation or lay opinion." Morales, 225 F.3d at 317.

The ALJ accorded "little weight" to Dr. Carabello's opinion, arriving instead at an RFC assessment that was "supported by the consultative examiner's findings, the medical treatment record and the objective tests contained in the record." R. at 15. In doing so, the ALJ explained Dr. Carabello's opinion, and the significant limitations it placed on Brunson's ability to work, were "not supported by any objective findings or even treatment notes, but [were] based solely on the subjective allegations of the claimant." Id. Although the medical source statement suggests Brunson has "bulging and herniated" disks and "lumbar disc disease with radiculopathy," R. at 223, Dr. Carabello's sparse treatment notes contain no such diagnoses, R. at 206-21. Likewise, in imposing restrictions on Brunson's exposure to temperature extremes, vibration, humidity, and hazards, Dr. Carabello explains an impact environmental limitations have on Brunson -- including causing pain and "spasm," R. at 225 -- that is nowhere reflected in her treatment notes, R. at 206-21.[21] Such unsupported statements, whether exaggeration or

_____

[21]In fact, sensitivity to temperature, humidity, vibration, or hazards is not reflected anywhere in the record. See, e.g., R. at 20-27, 91-105, 109-15, 134-37, 184-202.

18

misrepresentation, constitute an ample basis to discredit a treating physician's opinion.

Moreover, contrary to Dr. Carabello's opinion, nearly all objective tests documented in the medical record since May 2007 yielded benign results. See, e.g., R. at 136 (negative SLR tests and other normal observations); R. at 197-98 (negative SLR tests, normal gait, and full strength); R. at 214 (several negative tests, including SLR). The consultative examiner, Dr. Tehrani, noted tenderness without radiation over Brunson's lower spine, but otherwise made a litany of normal observations about her ability to stand, walk, and bend. R. at 136. Furthermore, treatment notes from Dr. Ahsan -- Brunson's primary treating specialist for her back pain -- acknowledge ongoing symptoms, but consistently describe improvement in her condition, especially after her third and final round of steroid injections. R. at 184, 188, 192-93, 197-98.

In light of the objective medical records, Dr. Tehrani's examination report, Dr. Ahsan's treatment notes, and Dr. Carabello's contemporaneous progress notes, the ALJ's determination that Dr. Carabello's opinion was not entitled to controlling or substantial weight was supported by substantial evidence. The ALJ considered all the evidence, noted the lack of support for Dr. Carabello's statement, and explained her reasons for weighing the evidence in the manner she did. R. at 14-15. Under these circumstances, I may not reweigh the evidence or substitute my own determinations for those of the ALJ. Burns, 312 F.3d at 118; see Diaz, 577 F.3d at 506 (requiring deference to an ALJ's reconciliation of conflicting expert opinions).

D.    Brunson's Credibility

Finally, Brunson alleges the ALJ erred in not finding her fully credible. See Plaintiff's Brief at 14-15. The ALJ determined Brunson's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the

19

[RFC] assessment," R. at 14, and in light of Brunson's "very poor work record," the ALJ found

she was "not entitled to the heightened credibility accorded to individuals with a long work

record," R. at 15.[22] Once again, the ALJ adequately explained the basis for her finding, which is

supported by substantial evidence in the record, rendering Brunson's criticism baseless.

A credibility finding merits deference based on the ALJ's ability to observe the claimant's

demeanor. Reefer, 326 F.3d at 380; see also Jishiashvili v. Attorney Gen., 402 F.3d 386, 392 (3d

Cir. 2005); Bembery v. Barnhart, 142 F. App'x 588, 591 (3d Cir. 2005). I must nevertheless

exercise meaningful review. Cao v. United States, 407 F.3d 146, 152 (3d Cir. 2005). The

reasons supporting credibility findings must be substantial and bear a legitimate nexus to the

findings as demonstrated by inconsistent statements, contradictory evidence, or inherently

improbable testimony. Reefer, 326 F.3d at 380; accord St. George Warehouse, Inc. v. NLRB,

420 F.3d 294, 298 (3d Cir. 2005) (credibility determinations should not be reversed unless

"inherently incredible or patently unreasonable" as long as the ALJ considers all relevant factors

and explains her decisions). If supported by substantial evidence, the ALJ's credibility findings

may not be disturbed on appeal. Hirschfeld v. Apfel, 159 F. Supp. 2d 802, 811 (E.D. Pa. 2001).

Here, the ALJ questioned Brunson's credibility with regard to the severity of her

symptoms because "the treatment notes do not show a person who is precluded from all work

activity."[23] R. at 15. In reaching this conclusion, the ALJ reviewed the medical evidence,

---

[22]Indeed, Brunson admitted she only began working in 2004 because the shelter where she was living required its residents to find jobs. R. at 20; see 20 C.F.R. § 416.929(c)(3) (listing "prior work record" among factors considered in assessing symptoms); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996) (same).

[23]The ALJ did not wholly reject Brunson's testimony; rather, she was persuaded Brunson does suffer from multiple severe impairments, R. at 13, which impose "some limitations" on her

including Brunson's MRI showing only "mild" stenosis, Dr. Ahsan's notes showing substantial pain relief following Brunson's three rounds of injection treatment, and Dr. Tehrani's examination report.  R. at 15.  Such objective evidence -- especially Dr. Ahsan's most recent notes, in which he documents Brunson's own description of her significant pain relief and her reduced need for arthritis medication -- undercuts the credibility of Brunson's subjective complaints, to the extent she suggests she cannot perform any work.[24]

Because the ALJ considered all relevant information in the record and explained her determination, which was not "patently unreasonable," I must defer to the ALJ's assessment of Crandall's testimony.  See St. George Warehouse, 420 F.3d at 298.  Therefore, substantial evidence supports the ALJ's credibility finding.

Accordingly, I make the following:

---

ability to work, R. at 15.  In challenging the ALJ's credibility determination, Brunson points to no specific subjective complaints or portions of her testimony that the ALJ should have credited, and, if credited, would have altered the ALJ's decision.  See Plaintiff's Brief at 14-15.  Instead, she essentially asks me to weigh the evidence on my own and reach a different conclusion.  That I may not do.  Burns, 312 F.3d at 118; see also Diaz, 577 F.3d at 506 (requiring deference to the ALJ's evaluation of evidence and credibility assessments).

[24]A review of Brunson's agency submissions reveals numerous other extreme subjective complaints that are not supported by the medical record or her testimony before the ALJ.  See, e.g., R. at 96-97 (describing an inability to pay attention for longer than ten minutes, a need to rest for fifteen minutes after walking one block, and paranoia); R. at 114 (describing complete dependence on her son and inability to "carry anything").

# R E C O M M E N D A T I O N

AND NOW, this __th day of April, 2011, it is respectfully recommended that Brunson's request for reversal be DENIED and judgment be entered for the Commissioner. Brunson may file objections to this Report and Recommendation within fourteen days after being served with a copy thereof. <u>See</u> Fed. R. Civ. P. 72. Failure to file timely objections may constitute a waiver of any appellate rights. <u>See</u> <u>Leyva v. Williams</u>, 504 F.3d 357, 364 (3d Cir. 2007).

BY THE COURT:

 /s/ Timothy R. Rice_____
TIMOTHY R. RICE
UNITED STATES MAGISTRATE JUDGE